OPINION
Defendant-appellant Bradley Parks appealed his conviction and sentence from the Licking County Municipal Court on one count of domestic violence in violation of Revised Code 2919.25, a misdemeanor of the first degree. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On March 22, 1999, appellant Bradley Parks was charged with one count of domestic violence in violation of Revised Code 2919.25, a misdemeanor of the first degree. At his arraignment on March 30, 1999, appellant entered a plea of not guilty to the charge. Thereafter, a bench trial was held in the Licking County Municipal Court on April 20, 1999. The following evidence was adduced at trial. Jessica Fenton, the mother of appellant's three children, had been residing with appellant for approximately seven months when the facts giving rise to this case occurred. Appellant's brother, sister and mother also lived in the same household as appellant and Fenton. At trial, Fenton testified that on Saturday, March 13, 1999, at approximately 9:30 or 10:00 P.M. appellant, during an argument, grabbed her by the neck with one hand, picked her up off the floor, and slammed her up against a wall. According to Fenton, other than the couple's three children, no one else was present in the home at the time of the alleged assault. Fenton also testified that after the initial assault, appellant left the couple's residence for a period of time and then returned home. Appellant then assaulted Fenton again. Fenton testified that appellant punched her in the chest and arm, causing bruising, and also encouraged their three young children to attack her physically. According to Fenton, no one was present in the house other than the couple and their three young children at the time of the second assault. On the following Monday, appellant went to New Beginnings, a battered womens' shelter, and then went to the Heath Police Station and made a police report. Fenton testified that she waited until Monday to make a police report because "I didn't know what to do." Transcript of Proceedings at 10. Subsequently, on Friday, March 19, 1999, photographs of Fenton's injuries were taken by the police. Bonnie Flowers, a dispatcher at the Heath Police Department, testified at trial that she had observed the bruises on Fenton's body that "related to the incident that she [Fenton] reported and that Fenton "had a mark on her, it would be her right arm that looked like she had been grabbed." Transcript of Proceedings at 51. Flowers further testified that Fenton had a round bruise on her upper right arm with very light bruising as well as a bruise on her left breast approximately four inches across. The photographs of Fenton's injuries were admitted into evidence. According to Flowers, the photographs taken of Fenton's injuries did not fairly and accurately represent Fenton's injuries because of the six day lapse of time between the assault on March 13, 1999 and the time when the photographs were taken. Flowers also testified that, in reality, the bruising was a "tad bit darker" than it appears in the photographs. Transcript of Proceedings at 52. Fenton herself had testified at trial that appellant's grab to her throat had not produced any visible injuries although the blow to her chest had. Appellant also testified at the bench trial. Appellant testified that on the evening of March 13, 1999, he would have been unable to commit the assaults on Fenton during the time alleged. Appellant testified that, on such date, he had been dropped off downtown at an AA meeting by Chris Stout, a friend, at approximately 8:00 P.M. and that he was picked up by his [appellant's] sister between 9:30 and 9:45 P.M. While an AA sign-in sheet was admitted into evidence without objection that shows that appellant attended an AA meeting on March 13, 1999, the AA time sheet was not time stamped. Both Chris Stout, appellant's friend, and Melissa Parks, appellant's sister, also testified at trial on behalf of appellant. Stout testified that at approximately 8:30 P.M. on March 13, 1999, he drove appellant to an AA meeting. Melissa Parks, appellant's sister, in turn testified that she picked appellant up at his AA meeting at approximately 9:30 P.M. and took him home. Parks further testified that she remained at appellant's residence until approximately 11:30 P.M. and then left for approximately half an hour before returning. Parks testified that she did not witness any injuries to Fenton or see any marks on Fenton either the evening of March 13, 1999 or the next day. At the conclusion of the bench trial, the trial court found appellant guilty of domestic violence in violation of R.C. 2919.25. The trial court, in finding appellant guilty, specifically held as follows: "Well frankly, Mr. Parks, as I indicated, I didn't believe your witnesses and I guess I didn't believe you. I believe this young lady. I thought she was a very credible witness and the icing on the cake for me were the bruises which dispatcher Flowers testified about. So I find that you did commit the offense of domestic violence and I have no reason to disbelieve that you told your children the things that she related in court and also I have no reason to disbelieve that, uh, that any of the things she said in court happened as she said they happened." Transcript of Proceedings at 58.
Thereafter, the trial court sentenced appellant to 180 days in jail, suspending 150 of those days, and ordered that appellant pay a fine of $200.00 and court costs. The trial court also ordered that appellant would be on probation for two years once he was released from jail. A Journal Entry memorializing appellant's conviction and sentence was filed on April 20, 1999. It is from his conviction and sentence on one count of domestic violence in violation of Revised Code 2919.25, a misdemeanor of the first degree, that appellant prosecutes his appeal raising the following assignment of error:
 THE CONVICTION OF THE DEFENDANT-APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I
Appellant, in his sole assignment of error, contends that his conviction for domestic violence was against the manifest weight of the evidence. According to appellant, appellant's conviction was against the manifest weight of the evidence since Fenton's testimony "simply lacked any credibility." On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380, 387 citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. Upon review of the record in this matter, we cannot say that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. Appellant in the case sub judice was found guilty of domestic violence in violation of Revised Code Section 2919.25 of the Revised Code. Such section provides as follows: "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member. (B) No person shall recklessly cause serious physical harm to a family or household member."
During the bench trial, Fenton testified that as of March 13, 1999, she had been residing with appellant for approximately seven months. According to Fenton, on such date, appellant "grabbed me by the neck, walked me over to the, over to the wall, and then he slammed me up against the wall." Transcript of Proceedings at 8. Fenton also testified that, later the same evening, appellant punched her causing bruises. Specifically, Fenton stated that appellant punched her in the arm and chest during this later incident. Transcript at 17. According to Fenton, after the first assault, appellant left and went over to his friend's house. In addition, Fenton testified that when appellant returned from his friend's house, "[i]t started out, he was wrestling with the kids but then I got into it somehow. I don't know how, but it happened. And he was talking to my son, Aaron, and then that's when he had Aaron grab me by the hair and then punch me in the face and he told him to tell mommy that she was a fucking bitch. So Aaron looked at daddy, then he looked back at me, and he had done what he was asked to do to me and then he was playing with my son, Matthew, after that and he asked Matt, he said do you want me to beat mommy till she bleeds so we can go put her in a ditch somewhere? And Matt said no and he started crying." Transcript of Proceedings at 12. Although the assaults occurred on a Saturday, Fenton testified that she did not make a police report until the following Monday since she "did not know what to do." Transcript of Proceedings at 10. Photographs of injuries to Fenton's chest and her arm, which were taken by the Police Department on March 19, 1999, were admitted into evidence. In addition, Bonnie Flowers, a Dispatcher with the Police Department, testified that on March 19, 1999, she had observed bruises on Fenton's right forearm and left breast. While appellant testified at trial that he did not cause Fenton's injuries, the trial court, as trier of fact, had the opportunity to observe both appellant's and Fenton's testimony and demeanor and to assess their credibility. In addition, the trial court also had the opportunity to assess the credibility of appellant's sister and of appellant's friend, Chris Stout. Clearly, the trial court found the testimony of appellant, his sister, and appellant's friend to be lacking in credibility. Accordingly, upon our review of the entire record, we find that the trial court did not clearly lose its way so as to result in a manifest miscarriage of justice. The trial court, as trier of fact, was presented with sufficient evidence from which it could find that appellant had knowingly caused or attempted to cause physical harm to Fenton, a household member, on March 13, 1999, and that, therefore, appellant was guilty of domestic violence. Appellant's sole assignment of error is, therefore, overruled.
The Judgment of the Licking County Municipal Court is affirmed.
By EDWARDS, J. HOFFMAN, P.J. and FARMER, J. concurs.